UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| REBECCA H., on behalf of JOSEPH H.[1], | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 4:21cv15 ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, § 1383(c)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant was born on March 8, 2002 and was, therefore, an adolescent on

       August 28, 2018, the application date (*e.g.*, 20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 on March 7, 2020 (20 CFR 416.120(c)(4)).

2. The claimant has not engaged in substantial gainful activity since August 28, 2018, the application date (20 CFR 416.971 *et seq.*).

3. Prior to attaining age 18, the claimant had the following severe impairments: autism spectrum disorder, mood disorder, and attention deficit hyperactivity disorder (20 CFR 426.924(c)).

4. Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a)).

7. The claimant has not developed any new impairment or impairments since attaining age 18.

8. Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.920(c)).

9. Since attaining age 18, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

10. After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: and [sic] can understand, remember and complete simple, routine, repetitive tasks; maintain adequate attention and concentration for simple, routine, repetitive tasks; interact appropriately but on an occasional basis with supervisors and an occasional and superficial basis with coworkers and no direct work related contact with the general public; requires work free of fast-paced direction and quotas (meaning no tandem work assignments, machine regulated work or hourly

3

production requirements) and a substance free work environment and can manage the changes in a simple, routine repetitive work environment.

11. The claimant has no past relevant work (20 CFR 416.965).

12. The claimant was born on March 8, 2002 and attained age 18 on 3/7/2020. He a younger individual age 18-49, on the date of attainment of age 18 (20 CFR 416.963).

13. The claimant has a limited education (20 CFR 416.964).

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

15. Since the date the claimant attained age 18, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

16. The claimant has not been disabled, as defined in the Social Security Act, since August 28, 2018, the date the application was filed (20 CFR 416.906 and 416.924(a) and (c)), through the date of this decision.

(Tr. 30-45).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on October 15, 2021. On December 23, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on January 20, 2022**.** Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

4

as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Rebecca H. ("Mother"), filed an initial claim for SSI benefits for her son, Joseph H. ("Plaintiff") on October 18, 2016. (Tr. 209-214.) At the time of his application, Plaintiff was sixteen years old. (Tr. 210.) In her initial disability report, Mother reported that Plaintiff's disabling illnesses and conditions were Autism Spectrum Disorder/Asperger's, developmental delay due to learning disabilities including dyslexia and auditory processing disorder, oppositional defiant disorder, attention deficit hyperactivity disorder, and mood disorder. (Tr. 230.)

As part of the disability evaluation process, Mother responded to a third-party adult function questionnaire about Plaintiff. (Tr. 245.) In the November 18, 2018 report, Mother reported that Plaintiff worked with a behavioral specialist on a weekly basis and had been granted caregiver service. Mother explained Plaintiff struggled with task completion and had difficulty following directions. Plaintiff was easily frustrated and the caregivers provided assistance to keep

5

his frustration down and keep him on task. (Tr. 247.) Mother explained that these caregivers followed the behavior support plan to handle Plaintiff's anger. Plaintiff, weighing 300 pounds, frequently used intimidation to gain control of a situation. (Tr. 247, 249). Plaintiff would have occasional meltdowns where he would punch holes in walls or throw his belongings. (Tr. 249.) Plaintiff typically avoided social functions and depended on his direct support provider to comprehend situations and process feelings. He angered quickly and needed help to calm before his impulsivity would escalate into a conflict. Mother expressed concern that Plaintiff tended to bottle up his emotions and explode at random times. Plaintiff struggles with regulating emotions and becomes verbally and physically aggressive and uses intimidation to gain control of situations. (Tr. 252.)

Mother responded to the questions about Plaintiff's abilities, stating that Plaintiff's impairments impacted talking, hearing, seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. She explained that Plaintiff's perceptions of situations were not always accurate, and that he needed concepts explained and directions repeated often. (Tr. 250.) Mother explained that Plaintiff had poor coping skills but was doing better with the recent addition of the service providers and behavior specialist. Plaintiff would get angry if he was not told about upcoming changes in advance. (Tr. 251.) Mother also explained that Plaintiff was in danger of being put on probation status at school due to frequent absences and that he struggled with the stress associated with school social interaction until he was physically sick. He would complain about nausea and headaches. (Tr. 252.)

Plaintiff's initial application for SSI benefits was denied on November 16, 2018. (Tr. 158-161.) Plaintiff filed a request for reconsideration on December 26, 2018. (Tr. 162-165.) In the

supporting SSA 3441 Disability report form, dated January 4, 2019, Mother advised that she included a current neuropsychological evaluation, the Indiana Family and Social Services approval for the Division of Disability and Rehabilitative Services (DDRS)-Bureau of Developmental Disability Services (BDDS) Community and Family Support waiver, a confirmation of diagnosis from the treating psychiatrist, and the Indiana BDDS individual support plan which outlined the support services Plaintiff required due to in-home care and behavior. (Tr. 259,1048, 551-568.) Plaintiff's application was again denied on January 31, 2019. (Tr. 166-168.) Plaintiff then filed an appeal request on March 21, 2019, and included a referral notice by Gerald Lewis, MSN, CNS, APRN referring Plaintiff for neuropsychological testing due to a decline in function, medication management and differential diagnoses. (Tr. 170.)

A hearing was scheduled for 8:30 a.m. on November 21, 2019, at the Office of Hearing Operations in Valparaiso, Indiana. (Tr. 240.) The hearing notice advised that Mother could review the claim file on the day of the hearing if she arrived at least sixty minutes prior to the hearing. Mother went to the wrong building and was over an hour late to the hearing.[2] The hearing began at 9:44 a.m. Plaintiff was unrepresented at the hearing and Mother (as guardian) signed a waiver of representation. (Tr. 205.) The hearing was short, lasting just twenty-seven minutes. (Tr. 22-52.) The ALJ ordered medical records, a medical expert interrogatory and vocational expert interrogatory after the hearing.

An unfavorable determination was issued nine months later, on August 3, 2020. (Tr.

---

[2] Mother has submitted a letter to the Court in which she explains her difficulties getting to the hearing and her inability, under the circumstances, to review the evidence file before the hearing. While the letter is not in the form of a sworn affidavit, the Court will nevertheless consider the letter, as none of the facts therein, which are referred to in Plaintiff's opening brief, are contested by the Commissioner.

22-38.) Plaintiff requested review by the Appeals Council on October 2, 2020, with argument and supplemental evidence. (Tr. 206-208.) The Appeals Council denied review in a Notice of Appeals Council Action dated November 10, 2020. (Tr. 7-11).

The administrative record includes records from Dr. Michael Frampton, psychiatrist, and Gerald Lewis, CNS, May 28, 2014-July 9, 2014. (Tr. 1451-1457.) The records indicate Plaintiff was being treated for Anxiety, Depression, ADHD, and concerns of borderline IQ. The record also includes a neuropsychologist evaluation and testing battery from Judith DeGrazia-Harrington Ph.D. SPP on June19, 2015 when Plaintiff was in the eighth grade. (Tr. 1140-1150.) Dr. DeGrazia-Harrington's testing led to diagnoses of autism spectrum disorder, abnormal auditory processing disorder, anoxia at birth, attention deficit hyperactivity disorder (combined type) and mood disorder. (Tr. 1140.)

The record also includes a Cooperative School Services, Psychoeducational Evaluation, Functional Behavioral assessment report dated November 3, 2015, signed by Stacy Schulties Ed.S. NCSP, a school psychologist. (Tr. 1108- 1136, 1373-1393.) The report concluded that Plaintiff did not meet criteria for additional service for autism or special learning disability. Records of Dr. Michael Frampton, psychiatrist, and Gerald Lewis, CNS, October 11, 2017, and February 7, 2018, indicate Plaintiff was being treated for an unspecified mood disorder, Asperger's syndrome and attention deficit hyperactivity disorder, predominately hyperactive type. (Tr. 508-511.)

Plaintiff receives behavioral therapy and support from Behavior Specialists of Indiana under the Medicaid Family Supports Waiver. The initial Function Behavior Assessment Report was completed on August 14, 2018, after extensive in-person observation of Plaintiff alone and

8

with his mother. (Tr. 1191-1195.) The assessment was written by Bill Wittpenn, Ms.Ed, and Debra Farrar-Schneider, Ph.D., a clinical psychologist, and was implemented on September 1, 2018. (Tr. 1196-1204.) The assessment noted that Plaintiff was already receiving 47 PAC hours every month to help him improve life skills. (Tr. 1191.) The report the noted cognitive deficiencies that Plaintiff displayed to an exaggerated degree including problems expressing emotions, poor consequences of behavior, did not learn from consequences, did not listen, had anxiety, impulsivity, poor attention span and problems expressing thoughts and ideas. The targeted areas for the behavior plan were to address issues of non-compliance such as when frustrated Plaintiff would be loud, use excessive complaints, threaten physical aggression, and leave his assigned area. He would also refuse to speak and become intimidating. (Tr. 1193.) The plan was also to address his social skills deficits, and his refusal to communicate in a social situation. (*Id*.) Specifically discussed was addressing the issue of trying to escape from tasks or activities. (Tr. 1194.) Another prong of the assessment was to deal with intimidation including verbal outbursts and property destruction. (*Id*.) The report reflects that Plaintiff tends to not recognize boundaries when it comes to peers and adults in the community. It has been observed that these behaviors occur when he is exhibiting a desire to be a part of a group or is unable to communicate his feelings appropriately. However, when this occurs, he will refuse to communicate with those that are closest to him. The function of this behavior is for attention, belonging, and to escape from task or activities. (Tr. 1193-1194.) Plaintiff also has issues with wandering away.

  The behavior assessment of Mr. Wittpenn and Dr. Farrar-Schneider further notes that Plaintiff has an intimidating presence, often presents facial expressions of anger, mishandles

9

property, has verbal outbursts, calls others derogatory names, curses, threatens, and yells. (Tr. 1194.) These behaviors function as methods of avoiding communications and expressing his frustration permitting him to avoid appropriate communications about his frustrations and to escape from tasks. Plaintiff also resorts to banging, slamming, and breaking property. These behaviors also function as methods of expressing his frustration, to gain attention, to avoid interactions with others, and to escape from tasks. The behaviorist also noted concerns that Plaintiff would wander away to avoid participation. The recommendation was to provide behavior management weekly and to work with the family to help him communicate.

When Plaintiff filed a request to the Appeals Council, he submitted a March 20, 2019 referral, from Gerald Lewis CNS, for neuropsychological testing due to a recent decline in Plaintiff's function and medication management. (Tr. 170.)

As part of his managed waiver services, Plaintiff attended a battery of neuropsychological testing and psychological evaluation with Dr. Robert Coyle on April 16, 2019, at the request of the FSSA/BDDS vocational rehabilitation counselor, Christian Laure. (Tr. 299, 1436-1444.) Plaintiff was noted to have a flat affect and poor eye contact on examination. (*Id*). He also was noted to be withdrawn and aloof; however, he appeared to be putting forth his best effort during the examination. (*Id*.) Results of the Wechsler Adult Intelligence Scale-IV, indicated that Plaintiff's verbal comprehension index score was 74, placing him in the low average/mildly cognitively disabled range. (*Id*). Similar findings were noted with perceptual reasoning index and working memory index with a score of 63. (*Id*.) Plaintiff also scored a 65 in processing speed, which also placed him in the mildly cognitive disabled range. (*Id*.) Dr. Coyle noted that Plaintiff's scores were remarkably lower than his previous scores four years prior which were in the average

10

range. (Tr. 1286.) Similar findings with lower scores were also found based on the results of Plaintiff's Woodcock Johnson Tests of Achievement-III, which suggested functional sub-literacy in all areas; including reading, writing, and mathematics. (*Id*.) Results of the Vineland Adaptive Behavior Scales –III Edition, showed strength in communication skills and weaknesses in self-help and social functions. (Exhibit 16F/P6). Plaintiff's scores on the Clinical Assessment of Attention Deficit-Adult (CAT-A) showed a marked reduction in hyperactivity as Plaintiff has grown older. (*Id*.) Additional testing for autism suggested that Plaintiff continued to meet the criteria for Asperger syndrome. (Tr.1288.) This is reflected by Plaintiff's trouble with eye contact, facial expression, and failure to develop peer relations appropriate to his age, lack of spontaneous sharing, limited reciprocity, and preoccupation with electronic games with sleep deprivation, inflexibility with change, transitioning, and lining up cars rather than playing with them. (*Id*.)

Dr. Coyne specifically cited the Dictionary of Occupational Titles General Education Development standards and stated that Plaintiff could only perform jobs rated less than 1 for reasoning, math and language level. Dr. Coyne opined "Where things stand at this time, he is not appropriate for unskilled employment. He may not be able to handle supported employment until her is more stabilized in his mood. He will require continued guardianship into adulthood." (Tr. 1443-44.)

Plaintiff had another formal, extensive neuropsychological evaluation by Judith DeGrazia-Harrington, Ph.D. on June 18, 2019. (Tr. 87-99.) Plaintiff claims that this examination was not seen by the ALJ. Dr. DeGrazia-Harrington noted that overall cognitive ability as evaluated by the WAIS-V could not be easily summarized as Plaintiff's nonverbal reasoning abilities are much better developed than verbal reasoning abilities. On verbal tasks, range as well as ability to

11

sustain attention, concentration and exert mental control, Plaintiff is in the low average range. (Tr. 92.) His processing speed index was in the 19th percentile. (Tr. 93.) Personality testing was performed suggesting problems in the areas of withdrawal, hyperactivity, aggression, conduct problems, somatization, attention, leadership, activities of daily living, functional communication and adaptive skills (Tr. 93.)

The diagnoses offered by Dr. DeGrazia-Harrington included autism, abnormal auditory processing disorder, attention deficit hyperactivity disorder (combined type) and bipolar disorder, most recent episode depressed. (Tr. 87.) Dr. DeGrazia-Harrington providence extensive recommendations to assist in management including Medicaid Waiver services and application for a group home and the vocational rehabilitation program. (Tr. 95-97.)

The record includes further treatment by Dr. Michael Frampton, psychiatrist, and Gerald Lewis, CNS, May 1, 2019 through July 12, 2019. (Tr. 1335-42.) The notes indicate re-evaluation for major depression, recurrent severe and oppositional defiant behavior. (Tr. 1331.) Plaintiff was unable to start an April, 2019 prescription for Seroquel as his mother could not afford the cost. (*Id*.) The records note diagnosis of an unspecified mood disorder, Asperger's syndrome, attention deficit hyperactivity disorder, predominately hyperactive type, borderline intellectual function, and mild mental retardation. (Tr. 1334, 1338.) Plaintiff reported that he was unable to tolerate taking Latuda. (Tr. 1335.)

In support of remand, Plaintiff argues that his waiver of representation was invalid. Plaintiff contends that the ALJ failed to obtain a valid waiver of counsel from Mother or from Plaintiff. At the outset of the hearing, the ALJ told Mother that she would consider a number of factors in determining whether Plaintiff was disabled under the regulations including the

testimony and the records contained within the case. Plaintiff contends that the ALJ did not explain the legal standard. The hearing record shows that the ALJ gave a short explanation that a representative could assist them with "gathering evidence, with preparing for and appearing at the hearing with you, and just kind of helping you through the process." (Tr. 112.) The ALJ also recited an explanation of the attorney fee process. Then the ALJ stated that "on the flip side" that there was no requirement to obtain a representative. Further, the ALJ described the hearing as a "user-friendly proceeding," designed so that "you folks can talk to me yourselves." The ALJ noted that the questions would be "similar" to what would be asked if they had a representative with them and that the office would assist them in obtaining any records that Mother asked her to "write off for." (Tr.112.) Given this information, Mother waived Plaintiff's right to counsel. (Tr. 113.)

      Plaintiff contends that the ALJ failed to provide adequate information for a knowing and valid waiver and that the casual and cursory manner in which the information was provided was misleading. The ALJ failed to inquire if Plaintiff had seen the file or knew which documents were there. Mother states that she did receive an encrypted compact disc in the mail but was unable to open the files. The Notice of Hearing further indicated that the file would be made available for review on the day of the hearing if Mother arrived at least sixty minutes prior to the hearing scheduled at 8:30 a.m. on November 21, 2019. (Tr. 187.) However, if Mother had arrived at 7:30 a.m. to review the file, she assumes she would have been met only with a locked door as the hearing office does not open until 8:30 a.m. However, Mother was late having gone to the wrong building, thus there was no opportunity for her to review the records. Plaintiff further asserts that there was no explanation to Mother and Plaintiff that they had the burden to make their best case,

13

provide evidence, or the legal requirements that had to be met to prove disability.

An applicant has a statutory right to be represented by counsel, *see* 42 U.S.C. § 406, but the right may be waived if the ALJ obtains a valid waiver. *Skinner v. Astrue*, 478 F. 3d. 836, 841 (7th Cir. 2007) To obtain a valid waiver, an ALJ must explain to the claimant "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingent arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Id*. (internal citation and quotation marks omitted).

The Seventh Circuit discussed a case quite similar to the case at bar in *Jozefyk v. Berryhill*, 923F.3d 492 (7th Cir. 2019):

> Jozefyk first argues that the ALJ did not obtain a valid waiver of his right to counsel before allowing him to proceed *pro se* at the hearing. Although Jozefyk is correct that he had a statutory right to counsel, *see* 42 U.S.C. § 406, a claimant can waive that right once advised of "'(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)). We mandate more disclosures than the regulations, which require the agency simply to notify the claimant in writing of his "options for obtaining attorneys," and the "organizations which provide legal services free of charge." 42 U.S.C. §1383(d)(2)(D); 20 C.F.R. § 404.1706; *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (discussing the Seventh Circuit's standard for waiver).
> Here, Jozefyk was adequately advised of his right to counsel. Months before the hearing, the agency mailed several written notices explaining his right to an attorney, counsel's role in disability proceedings, and available fee arrangements. Specifically, the "Your Right to Representation" pamphlet attached to his hearing notices lists, in detail, the admonishments this court requires to establish waiver.
> 
> \*     \*     \*
> 
> Second, so long as it contains the required information, written notice adequately apprises a claimant of his right to counsel. *Compare Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (per curiam) ("[T]he numerous

> written notices Castillo received … sufficiently informed her of her right to an attorney.") *with Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (written notice and oral reminders were insufficient because they failed "to fully discuss the benefits of legal representation or the possibility of contingency arrangements."). That's especially true when the ALJ issues the claimant an oral reminder at the hearing. *See Evangelista v. Sec. of Health and Human Serv.*, 826 F.2d 136, 142 (1st Cir. 1987). We decline to expand an already demanding waiver standard by requiring the ALJ to recite admonishments that the agency's own regulations do not require. Moreover, the ALJ was not silent: she confirmed that Jozefyk was appearing without an attorney and that he was aware of his right to counsel.

*Id*. at 496-97.

In the present case, on May 28, 2019, the Office of Hearings Operations mailed a letter to Plaintiff acknowledging his request for a hearing before an ALJ. (Tr. 174). This letter included a section on "Your Right to Representation". (Tr. 175). The letter also included 7 enclosures, including "SSA Publication No. 05-10075 (Your Right to Representation)". Additionally, at the start of the hearing, the ALJ orally reminded Plaintiff and Mother of Plaintiff's right to representation and Mother verbally waived representation. Mother further confirmed that she could read, and read a written Waiver of Representation, which she then signed and dated. (Tr. 112-13).

Thus, while it may very well be that Mother and Plaintiff did not fully understand the nature of the hearing or that a representative would likely be a necessity due to the heavy burdens placed on claimants, it is clear that the Agency did everything that was required of them by the Regulations and by Seventh Circuit precedent. Thus, the Court finds the waiver of representation to be valid, and there is no basis for remand on this point.

However, an ALJ always has a duty fully and fairly to develop the record. *Binion*, 13 F.3d at 245; *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). That duty is greatly heightened

15

when the claimant is unrepresented and has mental impairments. *Binion*, 13 F.3d at 245; *Ransom v. Bowen*, 844 F.2d 1326, 1330 n.4 (7th Cir. 1988). A decision denying disability based on an incomplete record is reversible error if there is a "significant" omission in the evidence—that is, one likely to have prejudiced the proceedings. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Here, Plaintiff contends that the file was incomplete. With regard to the record, the ALJ informed Mother and Plaintiff at the hearing that there were records in the file including the initial disability forms. The ALJ stated "We've got medical records. We've got records from the Kankakee Valley School Corporation, the IEP. I've got records from Dr. Lewis, St Mary Medical Center and numerous records that have been kind of collected along the way." Plaintiff notes that the ALJ did not offer Plaintiff the ability to see the file, did not provide a specific list of the evidence in the file, and did not explain that the file contained opinions from Agency medical consultants, whose opinions were ultimately adopted. (Tr. 113.)

Plaintiff also argues that the ALJ did not hold a pre-hearing conference. The first scheduling of a hearing of an unrepresented claimant may be held as a conference. The purpose of a pre-hearing conference would be to explain or discuss:

1. The right to representation, pursuant to HALLEX I-2-1-80 A, if he or she is unrepresented;

2. The hearing processes;

3. What is needed for a finding of disability;

4. What is in the claim file;

5. That medical treatment record(s) needs to be up-to-date and when applicable, that the claimant needs to submit a new form HA-4631 "Claimant's Recent Medical

16

>
> Treatment," HA-4632 "Claimant's Medications," or SSA-827 "Authorization to Disclose Information to the Social Security Administration" (for more information about obtaining a new form SSA-827, *see* HALLEX I-2-5-14 A); and
>
> 6. What any recent work or school activity must be reported to the Social Security Administration (SSA), and when applicable, any new work activity must be recorded in a form HA-4633 "Claimant's Work Background"; 7. any particular issue for which an ALJ or authorized designee requested the PHC; or additional information that is necessary for an ALJ to determine the next appropriate action or to come to an agreement on an issue(s).

In this case, The ALJ did not choose to use the pre-hearing conference method. According to Plaintiff, the ALJ did not explain the hearing process or what was needed for a finding of disability, nor did the ALJ provide a clear and concise recitation of what medical and school records were in the file, leaving Plaintiff to assume that all the records were in the file. Plaintiff contends there were serious omissions. The ALJ points to having "Dr. Lewis'" records through June 2019. However, Gerald Lewis is a certified nurse specialist who worked with treating psychiatrist Michael Frampton, M.D., and the ALJ did not have records through June 2019. The file itself shows medication visit notes only from three visits in May and June of 2019. There was a gap in the treating provider records between February 7, 2018, and May of 2019. Plaintiff argues that there were certainly treatments during that time gap as Mr. Lewis' note in May refers to prior notes. Plaintiff also submitted, with the agency appeal request, Mr. Lewis's referral for new neuropsychological testing. (Tr. 170.) Mr. Lewis was concerned about worsening issues. Plaintiff had neuropsychological testing and evaluation with Judith Degrazia- Harrington on June 18, 2019. (Tr. 87- 97.) Plaintiff asserts that this evaluation was not seen at the hearing level and was a significant omission. Plaintiff argues that the report squarely aligns with the conclusions of Dr. Robert Coyle, a neuropsychologist who evaluated Plaintiff, that Plaintiff is not appropriate for

17

unskilled employment or even supported employment until his mood stabilizes.

Plaintiff contends that the ALJ erred in her heightened duty to develop the record for an unrepresented and mentally ill claimant. Plaintiff claims that the ALJ's warm and friendly assertion that the hearing process was "user-friendly" is less than credible.³ Plaintiff notes that he was disadvantaged because he relied on the ALJ's recitation of the record and was not told what had to be shown to support a disability, or that Plaintiff's case would be reviewed under both adult and child standards. Plaintiff further asserts that the ALJ abused her discretion by rushing through a hearing and failing to utilize the pre-hearing conference procedure to ensure that Plaintiff's rights were protected.

The Commissioner has not directly responded to Plaintiff's arguments regarding the missing evidence, merely asserting that "the ALJ properly evaluated all of the relevant medical evidence." While it appears that the missing evidence was submitted later, after Plaintiff retained counsel, this was well after the hearing. Thus, the question is whether the outcome would have been different if the ALJ had received all of the evidence prior to the hearing. On this question, the Court will give Plaintiff the benefit of the doubt, due to the importance of a fair hearing to Plaintiff and his family. As Judge Scudder of the Seventh Circuit has recently noted, there is "so much at stake in these proceedings" and "[a] disability determination may well mark the difference between income and no income for the claimant." *Ruenger v. Kijakazi*, No. 20-2598,

---

³ Plaintiff's point is well-taken. Although the hearing process is billed as "informal" and "non-adversarial", it is clear from the many hearing transcripts this Court has read that the hearings are far from "user-friendly". In reality, a claimant needs a representative at these hearings (and before) due to, *inter alia*, the ALJ's reliance on the opinions of medical consultants and vocational experts, all of whom claimants, like the Plaintiff herein, are unaware even exist until they arrive at the hearing, unprepared.

slip op. at *12 (7th Cir. Jan. 14, 2022)(Judge Scudder concurring). Therefore, the Court will remand for a new hearing.

Plaintiff has raised other arguments in her opening brief, but as the ALJ's decision is being remanded for a new hearing on the above issue, the Court will not address the remaining arguments.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: February 7, 2022.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court